CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge
West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-5395
P.O. Box 36028
San Francisco, CA  94102
Telephone: (415) 436-6645
Facsimile: (415) 436-6632
E-mail: mike.underhill@usdoj.gov

ELLEN M. MAHAN
Deputy Section Chief
STEVEN O'ROURKE
Senior Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone:  202-514-2779
Facsimile:  202-514-2583
E-mail: steve.o'rourke@usdoj.gov

Attorneys for Plaintiff United States of America

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>RONALD L. COOK,<br><br>　　　　　Defendant. | Case No.:<br><br>IN ADMIRALTY<br><br>VERIFIED COMPLAINT OF THE UNITED STATES OF AMERICA |

VERIFIED COMPLAINT                         1

Plaintiff, the United States of America, alleges upon information and belief as follows:

**NATURE OF THE ACTION**

1. This is a case of admiralty and maritime jurisdiction against Defendant RONALD L. COOK ("Cook" or "Defendant"), *in personam,* as hereinafter more fully appears, and within Rule 9(h) of the Federal Rules of Civil Procedure.

2. The United States expressly reserves the right to amend this Complaint to, *inter alia*, add additional parties and assert additional claims against such additional parties and the present Defendant herein.

**JURISDICTION AND VENUE**

3. The United States is authorized to bring this suit and the Court has jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1345, 33 U.S.C. §§ 1321 and 2717, and 42 U.S.C. § 9613.

4. Venue is properly in this Court pursuant to, *inter alia*, 28 U.S.C. §§ 1391, 33 U.S.C. § 2717, and 42 U.S.C. § 9613.

5. The United States brings this action on behalf of the Oil Spill Liability Trust Fund (hereafter "Fund"), pursuant to the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 *et seq.*, to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees. Pursuant to OPA, 33

U.S.C. § 2712(f), the United States has acquired by subrogation, or may in the future acquire by subrogation, the rights of any claimant or State paid compensation from the Fund, and the United States specifically reserves the right to amend this Verified Complaint to assert any or all such subrogated rights and claims.

6. This civil action is also brought by the United States on behalf of the United States Environmental Protection Agency ("EPA") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9607. The United States seeks to recover response costs which EPA incurred in conducting removal actions as a result of releases and threatened releases of hazardous substances into the environment from the RESPECT. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on liability for response costs that will be binding on any subsequent action to recover further response costs.

## GENERAL FACTS AND ALLEGATIONS

7. On or about February 6, 2006, Sause Marine Services, Inc. ("Sause"), purchased the Tug RESPECT (EX: EDWARD J. ENGEL), O.N. 248085 (hereafter "Tug RESPECT"), for $1.00.

8. On February 24, 2006, purchase of the Tug RESPECT by Sause was recorded on the Tug RESPECT's Abstract of Title filed with the United States Coast Guard National Vessel Documentation Center.

9. On information and belief, at the time of the purchase of the Tug RESPECT by Sause the Tug RESPECT was located on navigable waters of the United States in or near the Oakland Estuary, a part of San Francisco Bay, within the State of California, all within this District and within the jurisdiction of this Court.

10. Sometime in 2006, but following Sause's purchase of the Tug RESPECT, the Tug RESPECT purportedly was sold by Sause to another entity for $1.00, said entity purportedly named JVL Equipment and/or JVL Equipment, Inc., and/or JVL Equipment Co. (hereafter collectively "JVL"), whose principal purportedly is and/or was Jeff Varnell. The United States has requested that documentation pertaining to the sale of the Tug RESPECT from Sause to JVL be provided to the United States, but to date no such documentation has been provided.

11. On information and belief, at the time of the said purported sale of the Tug RESPECT by Sause to JVL the Tug RESPECT was located on navigable waters of the United States in or near the Oakland Estuary.

12. On or about November 1st and/or 8th, 2006, the Tug RESPECT purportedly was sold by JVL to Cook for $1.00.

13. On information and belief, at the time of the said purported sale of the Tug RESPECT by JVL to Cook, the Tug RESPECT was located on navigable waters of the United States in or near the Oakland Estuary.

14. At all times material herein, defendant Cook was an individual, non-corporate entity, and based upon information and belief had a place of business and/or was

VERIFIED COMPLAINT                         4

doing business within this District and within the jurisdiction of this Court, and is subject to personal jurisdiction in this District and this Court, including but not limited to, through the ownership and/or operation and/or demise charter of the Tug RESPECT at the time of, and with RESPECT to, the matters sued upon herein.

15. At all times material herein, defendant Cook, based upon information and belief, owned the Tug RESPECT.

16. At all times material herein, defendant Cook, based upon information and belief, operated the Tug RESPECT.

17. At all times material herein, defendant Cook, based upon information and belief, demise chartered the Tug RESPECT.

18. At all times material herein, Cook was a "Responsible Party" within the meaning of OPA, 33 U.S.C. §§ 2701(32) and 2702(a), with respect to oil and the matters alleged in this Complaint.

19. At all times material herein, Cook was within the scope of entities specified in CERCLA, 42 U.S.C. § 9607(a), with respect to hazardous substances and the matters alleged in this Complaint.

20. On information and belief, at all the foregoing times referred to in the preceding paragraphs, *i.e.,* from the date of Sause's purchase of the Tug RESPECT until the purported sales from Sause to JVL, and the subsequent purported sale from JVL to Cook, the Tug RESPECT was in a deteriorated and unseaworthy condition.

21.     On information and belief, at all the foregoing times referred to in the preceding paragraphs, *i.e.,* from the date of Sause's purchase of the Tug RESPECT until the purported sales from Sause to JVL, and the subsequent purported sale from JVL to Cook, and continuing thereafter, the Tug RESPECT contained oil, as such term is defined in OPA, 33 U.S.C. § 2701 *et seq.*

22.     On information and belief, at all the foregoing times referred to in the preceding paragraphs, *i.e.,* from the date of Sause's purchase of the Tug RESPECT until the purported sales from Sause to JVL, and the subsequent purported sale from JVL to Cook, and continuing thereafter, the Tug RESPECT contained hazardous substances, as such term is defined in the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, and implementing regulations.

23.     In or about 2007, and as a result of grossly negligent and willful actions relating to, *inter alia*, the refusal of the then applicable owner(s) of the Tug RESPECT to provide protection and security to the Tug RESPECT, and to maintain the Tug RESPECT in even a minimal staunch and seaworthy condition, the Tug RESPECT sank within the Oakland Estuary.

24.     Following the sinking of the Tug RESPECT in 2007, the owner(s) of the Tug RESPECT willfully abandoned the Tug RESPECT and, *inter alia*, made no efforts to raise the Tug RESPECT, prevent its further deterioration, or prevent the discharge and/or substantial threat of discharge of oil and hazardous substances into navigable waters of the

United States and its adjoining shorelines, said conduct, among other conduct, constituting gross negligence and willful misconduct.

26. In or about August 2012, the California Department of Resources Recycling ("CalRecycle") requested assistance from the Coast Guard and EPA with respect to raising and disposing of vessels and facilities in the Oakland Estuary, including Tug RESPECT. Under this joint initiative, EPA was authorized to serve as Federal On Scene Coordinator ("FOSC") for the assessment and removal of hazardous substances under CERCLA, and the USCG, by and through the USCG FOSC, undertook duties regarding oil spill response under OPA, including efforts requiring use of the Oil Spill Liability Trust Fund ("OSLTF").

27. During removal of sediment from inside the abandoned and deteriorating Tug RESPECT, tar balls and heavy oil were discovered aboard the Tug RESPECT and, further, it was determined that additional amounts of oil were aboard the Tug RESPECT in areas that could not be safely accessed.

28. During removal of sediment from inside the abandoned and deteriorating Tug RESPECT, and in addition to the foregoing tar balls and heavy oil, hazardous substances were discovered aboard the Tug RESPECT, said substances including PCBs, Arsenic, Cobalt, Lead, Asbestos, and TPHd/mo.

29. The United States through its respective FOSCs, determined that the Tug RESPECT posed a substantial threat of discharge of oil and hazardous substances into navigable waters of the United States and its adjoining shorelines.

30. In order to mitigate the foregoing substantial threat of discharge of oil and hazardous substances, and in order to safely do so in a manner that would pose the least potential risk to life, property, and the environment, the decision was made to raise the Tug RESPECT and remove as much oil and hazardous substances as possible.

31. EPA began its response work in the Oakland Estuary removal action in September 2013. EPA first pumped out a large volume of sediment and seawater from the RESPECT so that it could be raised. EPA set up an adjacent land-based settling system where it initially placed the removed sediment and seawater from the TUG RESPECT. This sediment contained elevated levels of hazardous substances, including lead and copper. On December 2, 2013, the USCG mobilized two barge cranes to raise the Tug RESPECT. Once the Tug RESPECT was stabilized, it was taken to Bay Ship and Yacht, where approximately 31,000 gallons of oil laden sediments and approximately 40 cubic yards of asbestos, plus certain amounts of other hazardous substances, were removed.

32. On or about January 20, 2014, the Tug RESPECT was turned over to CalRecycle for demolition.

33. In March 2014, EPA conducted extensive asbestos abatement activities on the TUG RESPECT's boiler and steam distribution system.

34. On or after May 13, 2014, the removal of oil from the Tug RESPECT was deemed complete.

//

//

35. The foregoing substantial threats of discharge of oil and hazardous substances, including other acts and omissions to be established according to proof at trial, are hereafter referred to as the "Tug RESPECT Removal and Response Action."

36. The Tug RESPECT Removal and Response Action was proximately caused, *inter alia*, by the acts, omissions, strict liability, gross negligence, willful misconduct, and violations of federal construction and/or operating and/or safety regulations by the Tug RESPECT, its owner(s), operator(s), demise charterer(s), crew, agents, servants, employees, and others for whom Defendant was responsible, all within the privity and knowledge of Defendant.

37. As a direct and proximate result of the Tug RESPECT Removal and Response Action and the actions by and on behalf of plaintiff United States to mitigate and prevent the substantial threat of discharge of oil into navigable waters of the United States and its adjoining shorelines, approximately $2,467,566.90 was expended by and from the Oil Spill Liability Trust Fund, as follows:

| | |
|---|---|
| CG Contract | $2,357,783.05 |
| CG Equipment | $16,743.90 |
| CG Personnel | $85,219.25 |
| CG Purchases | $443.68 |
| TAD/TDY | <u>$7,377.02</u> |
| Total | $2,467,566.90 |

38. In addition to the costs incurred removing oil, EPA also incurred costs responding to asbestos and other hazardous substances. EPA spent approximately $1,115,345 in extramural (direct contractor) costs to dispose of the sediment and hazardous substances from the Tug RESPECT. In addition, EPA incurred costs of labor, travel, indirect rates, and interest, such that the total amount incurred is approximately $2 million.

39. The United States has made demand upon Defendant for reimbursement for all the outstanding response costs and damages owed by Defendant as a result of the Tug RESPECT Removal and Response Action, and said monies remain unpaid.

40. As a result of the Tug RESPECT Removal and Response Action as it pertains to oil, and as a result of the failure of Defendant to pay the full amount due and owing pertaining to removal of oil from the Tug RESPECT, $2,467,566.90, or such amounts as may be proved at trial, remain due and owing to the United States, plus interest, administrative and adjudicative costs, disbursements, and statutory attorneys' fees recoverable under OPA, 33 U.S.C. § 2715.

41. As a result of the Tug RESPECT Removal and Response Action as it pertains to hazardous substances aboard the Tug RESPECT, and as a result of the failure of Defendant to pay the full amount due and owing pertaining to removal of hazardous substances from the Tug RESPECT, approximately $2 million, or such amounts as may be proved at trial, remain due and owing to the United States, plus interest.

42. This Complaint herein does not presently assert claims for natural resource damages. The United States expressly reserves the right to amend this Complaint to add such claims for natural resource damages.

### AS AND FOR A FIRST CAUSE OF ACTION
### (OIL POLLUTION ACT OF 1990)

43. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

44. Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

45. Under the circumstances herein, Defendant is liable to the United States of America, without limitation, for all the aforesaid costs, damages, and/or disbursements sustained by the United States as a result of the Tug RESPECT Removal and Response Action.

### AS AND FOR A SECOND CAUSE OF ACTION
### (OIL POLLUTION ACT OF 1990)

46. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

47. Pursuant to the Oil Pollution Act of 1990, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

48. As a result of the Tug RESPECT Removal and Response Action, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under the Oil Pollution Act of 1990.

49. Pursuant to the Oil Pollution Act of 1990, Defendant is liable to the United States of America for all such costs, damages, and/or disbursements which may be sustained by the Fund.

50. The aforesaid unpaid costs, damages, and/or disbursements of the Fund, as provided in the Oil Pollution Act of 1990, are presently in excess of $2,467,566.90.

### AS AND FOR A THIRD CAUSE OF ACTION
### (OIL POLLUTION ACT OF 1990)

51. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

52. Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in any subsequent action or actions that Defendant is liable for removal costs and damages in any such subsequent action or actions.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (CERCLA, 42 U.S.C. § 9601 *et seq.*)

53. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

54. Pursuant to CERCLA, 42 U.S.C. § 9601 *et seq.*, including, but not limited to 42 U.S.C. § 9607, owners, operators, and other entities pertaining to vessels and facilities

from which hazardous substances are released, or which pose the substantial threat of release, into the environment and/or navigable waters of the United States, as defined at 42 U.S.C. § 9601(25) and authorized by Section 104 of CERCLA, 42 U.S.C. § 9604, are strictly liable for all costs specified in the Act.

55. Defendant is liable to the United States by virtue of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for all response costs, remedial costs, and other costs incurred and to be incurred by the United States in connection with the Tug RESPECT Removal and Response Action pertaining to hazardous substances. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g) and 28 U.S.C. § 2201, the United States also seeks a declaratory judgment on liability for response costs that will be binding on any subsequent action to recover further response costs.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (28 U.S.C. § 3001 *et seq.*)

56. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

57. Despite the liability, including strict liability, of Defendant to the United States, all as alleged in this Complaint, on information and belief, Defendant, in breach of law, including but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, has, *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

58. All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (31 U.S.C. § 3713)

59. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

60. Despite the liability, including strict liability, of Defendant to the United States, all as alleged in this Complaint, on information and belief, Defendant, in breach of law, has, *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

61. All such actions have caused damages, as will cause damages, to the United States in an amount to be established according to proof at trial.

62. To the extent that Defendant, and/or servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on his behalf or with his authorization, have discharged claims or debts to any other person or entity other than the United States, or in the future discharge claims or debts to any person or entity other than the United States in contravention of, *inter alia*, 31 U.S.C. § 3713, Defendant, and/or his servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on his behalf or with his authorization, are liable to the United States for the amount of any such payments.

VERIFIED COMPLAINT                              14

63. With respect to any payments in contravention of 31 U.S.C. § 3713, and pursuant to 31 U.S.C § 3713(b), any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities making such payments are personally liable to the United States for the amount of such payments.

64. The United States shall amend this Complaint to add as defendants, in their individual capacity, any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities who, in contravention of 31 U.S.C. § 3713(a) and (b), have already discharged, or in the future discharge, claims or debts to any person or entity other than the United States.

**WHEREFORE**, the United States of America prays as follows:

1. That United States of America be granted judgment against Defendant pursuant to the Verified Complaint of the United States herein;

2. That the United States of America be granted declaratory judgment against Defendant for pollution removal costs binding on any subsequent action or actions to recover further removal costs, plus interest, costs, disbursements, and attorneys' fees;

3. That the United States have constructive trusts as and against any and all assets of the Defendant, said constructive trusts being available to satisfy the amounts due and owing to the United States pursuant to the matters alleged in this Complaint;

4. The United States expressly reserves the right to amend this Complaint to add parties and/or causes of action, as may be necessary; and

5. For such other relief as the Court deems just and proper in the premises.

Dated: May 8, 2017.            CHAD A. READLER
                               Acting Assistant Attorney General


                               /s/ R. Michael Underhill
                               R. MICHAEL UNDERHILL
                               Attorney in Charge, West Coast Office
                               West Coast Office
                               Torts Branch, Civil Division
                               U.S. Department of Justice

                               /s/ Steven O'Rourke
                               STEVEN O'ROURKE
                               Senior Attorney
                               Environmental Enforcement Section
                               U.S. Department of Justice

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA


                               Of Counsel:

                               Lt. LaCresha Johnson, USCG
                               National Pollution Funds Center
                               United States Coast Guard

                               Sara Goldsmith
                               Assistant Regional Counsel
                               U.S. Environmental Protection Agency, Region 9

VERIFIED COMPLAINT                     16

# **VERIFICATION**

R. Michael Underhill says:

I am one of the attorneys for plaintiff, United States of America, herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: May 8, 2017.                         s/ R. Michael Underhill
                                            R. MICHAEL UNDERHILL